**SEALED** THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
DEC 1 2 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | UNDER SEAL |
| | : | |
| | : | CRIMINAL NO. |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 371 |
| | : | (Conspiracy to Commit an Offense and |
| SALIH ZEKI OZTURK | : | To Defraud the United States) |
| | : | |
| and | : | 50 U.S.C. § 1705 |
| | : | (International Emergency Economic |
| TOTAL AVIATION, LTD., | : | Powers Act Violation) |
| also known as SAS AVIATION, | : | |
| | : | 31 C.F.R. Part 560 |
| Defendants. | : | (Iranian Transaction Regulations) |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(c); |
| | : | 28 U.S.C. § 2461(c) |
| | : | (Criminal Forfeiture) |

**INFORMATION**

The United States Attorney charges that:

**COUNT ONE**

At all times material to this Information:

**General Allegations**

1. Defendant SALIH ZEKI OZTURK ("OZTURK") was a foreign national who held citizenship and resided in Turkey.

2. Defendant OZTURK was the owner, operator, and principal officer of defendant TOTAL AVIATION, also known as SAS AVIATION (hereinafter "TOTAL AVIATION"), a company located in Istanbul, Turkey.

3. Defendant OZTURK was the owner, operator, and principal officer of

AEROTECH AVIATION, a company located in northern Cyprus.

## The International Emergency Economic Powers Act
## and the Iranian Transactions Regulations

4.      The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorizes the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy or economy of the United States when the President declares a national emergency with respect to that threat.

5.      On March 15, 1995, the President issued Executive Order No. 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Executive Order No. 12957 was expanded and continued by Executive Orders Nos. 12959 and 13059.

6.      Executive Orders Nos. 12959 and 13059 (collectively, with Executive Order No. 12957, the "Executive Orders") imposed economic sanctions, including a trade embargo, on Iran. The Executive Orders prohibited, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders also prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in the Executive Orders.

7.      The Executive Orders authorized the United States Secretary of the Treasury, in consultation with the United States Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the

Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations ("ITR"), 31 C.F.R. Part 560, implementing the sanctions imposed by the Executive Orders.

8. The ITR generally prohibit, among other things, the export, reexport, sale, or supply, directly or indirectly, of any goods, technology, or services from the United States or by a United States person, wherever located, to Iran or the Government of Iran, without prior authorization or license from the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia. These regulations further prohibit any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the ITR, including the unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

9. The Executive Orders and the ITR were in effect at all times relevant to this Information.

10. At no time did defendants OZTURK or TOTAL AVIATION apply for, receive, or possess a license or authorization from the OFAC to export goods, technology, or services, of any description, to Iran.

**Export and Shipping Records**

11. Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those filings are filed electronically through the Automated Export System ("AES") administered by the United States Department of Homeland Security ("DHS"), Bureau of Customs and Border Protection, which is headquartered in the District of Columbia. A Shipper's Export Declaration ("SED") is an official document

3

submitted to DHS in connection with export shipments from the United States.

12. An essential and material part of the SED and AES, as well as other export filings, is information concerning the end-user or ultimate destination of the export. The identity of the end-user may determine whether the goods may be exported: (a) without any specific authorization from the United States government; (b) with the specific authorization or validated license from the United States Department of Commerce, the United States Department of State, or the United States Department of Treasury; or (c) whether the goods may not be exported from the United States.

13. The SED or AES is equivalent to a statement to the United States government that the transaction occurred as described. The SED or AES is used by the United States Bureau of Census to collect trade statistics and by the Bureau of Industry and Security, Department of Commerce, which is located in the District of Columbia, for export control purposes: Other United States government agencies located in the District of Columbia also rely upon the information provided by SED and AES records.

### Conspiracy to Export U.S.-Origin Aircraft Parts to Iran and to Defraud the United States

14. Beginning at least in or about March 2011, and continuing through at least in or about August 2012, in the District of Columbia and elsewhere, defendants OZTURK and TOTAL AVIATION did knowingly and willfully combine, conspire, confederate, and agree with others, to (a) commit an offense against the United States, that is, to export and cause the exportation of aircraft parts from the United States to Iran in violation of the embargo imposed upon that country by the United States, without having first obtained the required licenses or authorizations from the Department of the Treasury's OFAC, which is located in the District of

Columbia; and (b) defraud the United States Government, including the Department of the Treasury, by interfering with and obstructing a lawful government function, that is, the promulgation of laws prohibiting the export or supply of goods from the United States to Iran without a license, by deceit, craft, trickery, and dishonest means, all in violation of Title 18, United States Code, Section 371.

## Objects of the Conspiracy

The objects of the conspiracy were:

    A.    to make money for defendants OZTURK and TOTAL AVIATION and their co-conspirators;

    B.    to supply the Iranian Government, Iranian-based companies, and other entities with aircraft parts from the United States for use in civilian and miliary aircraft;

    C.    to evade the prohibitions and licensing requirements of the IEEPA and the ITR; and

    D.    to conceal the prohibited activities and transactions from detection by the United States Government so as to avoid penalties and disruption of the illegal activity.

## Manner and Means of the Conspiracy

15.    The manner and means by which the defendants OZTURK and TOTAL AVIATION and their co-conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    A.    Defendants OZTURK and TOTAL AVIATION and their co-conspirators used e-mail accounts and other forms of communication to communicate with each other, and with other individuals located in the United States, Turkey, and Iran.

    B.    Defendants OZTURK and TOTAL AVIATION and their co-conspirators

purchased aircraft parts from companies and suppliers located in the United States.

C.  Defendants OZTURK and TOTAL AVIATION and their co-conspirators caused shipments of aircraft parts to be made from the United States to Turkey and then caused the aircraft parts to be transshipped to Iran.

D.  Defendants OZTURK and TOTAL AVIATION and their co-conspirators caused the aircraft parts to be exported from the United States to parties in Iran, through Turkey, without first obtaining a license from the Department of Treasury's OFAC, which is located in the District of Columbia.

E.  Defendants OZTURK and TOTAL AVIATION and their co-conspirators intentionally concealed from United States Government agents the ultimate end-use and end-users of the aircraft parts.

F.  Defendants OZTURK and TOTAL AVIATION and their co-conspirators caused materially false, misleading, and incomplete information to be placed in documents such as AES and SED records.

### Overt Acts

16. In furtherance of this conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed or caused to be committed, in the District of Columbia and elsewhere, at least one of the following overt acts, among others:

### The transshipment of 350 U.S.-origin stud assemblies from Turkey to Iran

17. On or about February 19, 2011, a company located and doing business in Iran (hereinafter, the "Iranian Company") sent an e-mail to a broker located in Singapore, seeking price quotations for, among other things, 350 stud assemblies (Part No. 9M161-1-38B).

18. On or about August 8, 2011, defendant OZTURK, on behalf of SAS AVIATION

(the precursor company to TOTAL AVIATION), submitted a purchase order for 350 stud assemblies (Part No. 9M161-1-38B) to a U.S.-based supplier of aircraft parts. The U.S.-based supplier of aircraft parts thereafter sent SAS AVIATION an end user statement to execute in connection with its purchase order.

19.     On or about August 8, 2011, defendant OZTURK, on behalf of SAS AVIATION, executed the end user statement, indicating that the stud assemblies would be used by AEROTECH AVIATION, a company in northern Cyprus that he later purchased, and not re-exported. By executing the form, defendant OZTURK falsely asserted that SAS AVIATION would not re-export or resell the stud assemblies to any country not approved for export (including Iran) except by prior written approval from the U.S. Department of Commerce's Bureau of Industry and Security.

20.     On or about August 12, 2011, defendant OZTURK and SAS AVIATION caused the U.S.-based supplier of the aircraft parts to submit an SED to the United States Department of Commerce, headquartered in the District of Columbia, that falsely stated on the SED that the country of ultimate destination of the shipment of the 350 stud assemblies (Part No. 9M161-1-38B) was Turkey.

21.     On or between August 18 and 24, 2011, a representative of defendant TOTAL AVIATION, also known as SAS AVIATION, sent a representative of the Iranian Company copies of air waybills and invoices, indicating that defendant TOTAL AVIATION, also known as SAS AVIATION, sold and transshipped the 350 U.S.-origin stud assemblies (Part No. 9M161-1-38B) to the Iranian Company in Tehran, Iran.

### The transshipment of 7 U.S.-origin actuator kits from Turkey to Iran

22.     On or about June 9, 2011, a representative of the Iranian Company sent a request

7

for quote to a company located and doing business in France, seeking several aircraft parts, including 7 actuator kits (Part No. AR1280). The Iranian Company identified this request as reference number "2224."

23. On or about October 28, 2011, defendant OZTURK and another representative of defendant TOTAL AVIATION submitted a purchase order for 7 actuator kits (Part No. AR1280) to a U.S.-based supplier of aircraft parts. The U.S.-based supplier thereafter sent an end user statement for defendant TOTAL AVIATION to execute in connection with its purchase order.

24. Shortly thereafter, defendant OZTURK, on behalf of defendant TOTAL AVIATION, executed the end user statement, indicating that the actuator kits would be used by an end user in Turkey and not re-exported. In executing the form, defendant OZTURK falsely asserted that defendant TOTAL AVIATION would not re-export the U.S.-origin goods to Iran "unless otherwise authorized by the United Sates Government."

25. On or about November 11, 2011, defendants OZTURK and TOTAL AVIATION caused the U.S.-based supplier of the aircraft parts to submit an SED to the United States Department of Commerce, headquartered in the District of Columbia, that falsely stated on the SED that the country of ultimate destination of the shipment of 7 actuator kits (Part No. AR1280) was Turkey.

26. On or about November 17, 2011, a representative of defendant TOTAL AVIATION sent a representative of the Iranian Company copies of air waybills and invoices referencing purchase order "2224," indicating that defendant TOTAL AVIATION sold and transhipped the 7 actuator kits (Part No. AR1280) to the Iranian Company in Tehran, Iran.

**The transshipment of 500 U.S.-origin adapters from Turkey to Iran**

27. On or about January 9, 2012, a representative of the Iranian Company sent

purchase order "KHSPO 2304" to a representative of defendant TOTAL AVIATION requesting several aircraft parts, including 500 adapters (Part No. 676-8D).

28. On or about January 23, 2012, defendant OZTURK and another representative of defendant TOTAL AVIATION submitted a purchase order for 500 adapters (Part No. 676-8D) to a U.S.-based supplier of aircraft parts. The U.S.-based supplier thereafter sent an end user statement for defendant TOTAL AVIATION to execute in connection with its purchase order.

29. Shortly thereafter, a representative of defendant TOTAL AVIATION (not defendant OZTURK) executed the end user statement, indicating that the adapters would be used by an end user in Turkey. In executing the form, the representative of defendant TOTAL AVIATION acknowledged that the goods may be subject to various United States export control laws and that authorization from the United States Government may be required to export to countries such as Iran.

30. On or about January 30, 2012, defendants OZTURK and TOTAL AVIATION caused the U.S.-based supplier of the aircraft parts to submit an SED to the United States Department of Commerce, headquartered in the District of Columbia, that falsely stated on the SED that the country of ultimate destination of the shipment of 500 adapters (Part No. 676-8D) was Turkey.

31. On or about February 21, 2012, a representative of defendant TOTAL AVIATION sent a representative of the Iranian Company copies of a packing list referencing purchase order "KHSPO 2304," indicating that defendant TOTAL AVIATION sold and exported the 500 U.S.-origin adapters (Part No. 676-8D) to the Iranian Company in Tehran, Iran. On the electronic communication forwarding the packing list to the Iranian Company, the representative of defendant TOTAL AVIATION "cc'd" defendant OZTURK.

### The transshipment of $2,000,000 worth of
### T-56 engine parts from Turkey to Iran for use in Iranian military aircraft

32. From approximately May 2011 to June 2012, defendant TOTAL AVIATION purchased approximately $2,000,000 worth of aircraft parts from a U.S.-based supplier located and doing business in Sun Valley, California (hereinafter, the "Sun Valley Company"). Specifically, among other things, the Sun Valley Company engages in the business of manufacturing and selling aircraft parts designed for use in the Rolls Royce Allison T-56 engine (hereinafter the "T-56 engine"). The T-56 engine powers the C-130 military aircraft, which is manufactured by Lockheed Martin. The Iranian Air Force owns and operates numerous C-130 military aircraft. From approximately May 2011 to June 2012, defendant TOTAL AVIATION issued approximately 25 purchase orders to the Sun Valley Company in connection with the purchase of T-56 engine parts.

33. For each purchase order, defendant TOTAL AVIATION submitted an end user certificate to the Sun Valley Company, declaring that the T-56 engine parts were being delivered to defendant OZTURK's company AEROTECH AVIATION, which is located in the north of Cyprus, and falsely indicating that the T-56 engine parts were intended for end use by the Turkish Military in Turkey. In fact, however, defendants OZTURK and TOTAL AVIATION knew that the T-56 engine parts they purchased from the Sun Valley Company were actually intended for end use in Iranian military aircraft, namely the C-130 military aircraft.

34. As to each shipment of T-56 engine parts from May 2011 to June 2012 referenced above, defendants OZTURK and TOTAL AVIATION caused the Sun Valley Company to submit an SED to the United States Department of Commerce, headquartered in the District of Columbia, that falsely stated on the SED that the country of ultimate destination of the T-56

engine parts was Turkey.

## Aggregate Criminal Misconduct

35.     In total, between at least in or about March 2011, and continuing through at least in or about August 2012, in the District of Columbia and elsewhere, defendants OZTURK and TOTAL AVIATION did knowingly and willfully purchase, acquire, sell, and transship over $5,000,0000 worth of U.S.-origin aircraft parts for shipment from the United States to Turkey for intended transshipment to Iran for use in civilian and military aircraft located there.

## Failure to Obtain the Required Export Licence

36.     At no time during the relevant time period did defendants OZTURK or TOTAL AVIATION or others on behalf of defendants OZTURK or TOTAL AVIATION apply for, receive, and possess, or cause others to apply for, receive, and possess a license from OFAC, located in the District of Columbia, to export or cause to be exported any of the U.S.-origin aircraft parts referenced above from the United States to Iran, through Turkey.

**(Conspiracy to Unlawfully Export U.S. Goods to Iran and to Defraud the United States**, in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Part 560; and Title 18, United States Code, Section 371)

## FORFEITURE ALLEGATION

37.     Upon conviction of the offense alleged in Count One of this Information, the government will seek forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, U.S. Code, Section 981(a)(1)(C), and Title 28, U.S. Code, Section 2461(c). The government also will seek a money judgment for a sum of money up to $1,300,000, which represents a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense alleged in Count One of this Information.

38. If any of the property described above as being subject to forfeiture pursuant to Title 18, U.S. Code, Section 981(a)(1)(C), and Title 28, U.S. Code, Section 2461(c), as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, U.S. Code, Section 982(b)(1), incorporating by reference Title 21, U.S. Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of said property listed above as being subject to forfeiture.

    (**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c))

*[signature]*
RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar No. 415793

*[signature]*
T. Patrick Martin
D.C. Bar No. 471965
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W. (11th Floor)
Washington, D.C. 20530
(202) 292-7398
Thomas.Martin@usdoj.gov

*Casey Arrowood*
Casey Arrowood
D.C. Bar No. 996381
Trial Attorney/Counterespionage Section
Department of Justice
Bicentennial Building
600 E St NW, Room 10110
Washington, DC  20530
(202) 233-2259
Casey.Arrowood@usdoj.gov